**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| D Stadtler Trust 2015 Trust, et al., | No. CV-22-00314-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Pamela Gorrie, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion for leave to file a second amended complaint. (Doc. 103.) For the following reasons, the motion is granted.

**RELEVANT BACKGROUND**

On February 11, 2022, Plaintiffs filed a complaint in La Paz County Superior Court. (Doc. 1-2 at 10-27.) Plaintiffs are the D. Stadtler Trust 2015 ("the Trust") and Daniel Stadtler ("Stadtler"). (*Id.* at 10-11.) Defendants are Pamela Gorrie ("Gorrie"), Innovative Global Distributions, LLC ("IGD"), Natural Footprints Organic Farm LP ("NFOF"), and NFF Management LLC ("NFF"). (*Id.* at 11.)

On February 27, 2022, Gorrie removed the action to this Court. (Doc. 1.) Afterward, Plaintiffs challenged the validity of Gorrie's removal effort (Doc. 15), but the Court eventually denied Plaintiffs' motion to remand (Doc. 21).

On May 2, 2022, Plaintiffs filed their currently operative pleading, the First Amended Complaint ("FAC"). (Doc. 25.) The FAC asserts nine claims, including a claim in Count One for a receivership and a claim in Count Two for "Breach of Contract (Whole

Farm RSA)." (*Id.* at 18-26.) More specifically, the theory underlying Count Two is that the Trust and NFOF entered into an agreement in April 2020 called the "Whole Farm RSA," that "[t]he Trust performed all of its obligations under the Whole Farm RSA," that "NFOF has breached the Whole Farm RSA by failing to share revenue with the Trust," and that the Trust is therefore entitled to damages. (*Id.* ¶¶ 59, 110-14.)

On May 27, 2022, Defendants filed an answer to the FAC and counterclaims against Plaintiffs. (Doc. 38.)[1] At the same time, Defendants filed a motion for a temporary restraining order ("TRO") based on their counterclaims. (Doc. 39.) Specifically, Defendants sought a TRO "enjoining the [Trust] . . . from conducting a trustee's sale of the property located at 68562 56th Street, Salome, AZ 85348 . . . on June 9th 2022 at 10 am." (*Id.* at 1.) However, the parties later agreed to postpone the trustee's sale pending the resolution of the TRO request. (Doc. 60.)

On July 5, 2022, the Court issued the Rule 16 scheduling order. (Doc. 69.) Among other things, it provided that "[n]o motions to join parties, amend pleadings or filing supplemental pleadings shall be filed." (*Id.* at 1.)

On July 7, 2022, the TRO hearing took place. (Doc. 70.) During the parties' closing arguments, the Court asked the following question to Plaintiffs' counsel: "What is the consideration that backed the April Revenue Share Agreement? . . . Mr. Stadtler got a lot of consideration. He got potentially up to $5 million. What did Miss Gorrie get as consideration for giving away up to $5 million?" (Doc. 82 at 194.) Plaintiffs' counsel responded as follows: "So the Whole Farm RSA between [NFOF] and the Trust, the Trust gave zero consideration. It was a gift." (*Id.* at 194-95.) The Court then asked: "Maybe I'm missing something. How, consistent with Rule 11, can you guys have affirmative claims for breach of the RSA when you're coming in here and saying that the contract is [illusory] and is not backed by consideration?" (*Id.* at 195.) Plaintiffs' counsel replied: "Can I walk back on that argument then, Your Honor?" (*Id.*) At the conclusion of the

---

[1] Although Defendants had previously filed a motion to dismiss certain claims in the complaint (Doc. 17), that motion was rendered moot when Plaintiffs filed the FAC (Doc 45).

hearing, the Court denied Defendants' TRO request. (*Id.* at 198-206.)

On July 14, 2022, Defendants filed a First Amended Answer, Counterclaim, and Third-Party Complaint. (Doc. 77.) Among other things, this pleading added a series of third-party claims against William Houchin ("Houchin"). (*Id.* at 24-31.) Defendants also filed a notice confirming that Plaintiffs had agreed to the filing of an amended pleading. (Doc. 78.)

On August 10, 2022, Plaintiffs filed a motion to dismiss Defendants' counterclaims. (Doc. 87.) That motion is fully briefed (Docs. 90, 95) and will be resolved in due course.

On October 4, 2022, Defendants filed proof that Houchin has been served. (Doc. 99.)

On October 14, 2022, Plaintiffs filed the motion at issue in this order—a motion for leave to file a Second Amended Complaint ("SAC"). (Doc. 103.)

On October 28, 2022, Defendants filed a "preliminary" response. (Doc. 109.)

On November 2, 2022, Plaintiffs filed a reply to Defendants' preliminary response. (Doc. 114.)

On November 7, 2022, the Court ordered Defendants to file a substantive response by November 18, 2022. (Doc. 115.)

On November 18, 2022, Defendants filed a substantive response. (Doc. 123.)

On November 23, 2022, Plaintiffs filed a reply to Defendants' substantive response. (Doc. 126.) Neither side requested oral argument.

**DISCUSSION**

I.      The Parties' Arguments

Plaintiffs seek leave to file a SAC. (Doc. 103.) According to Plaintiffs, the SAC differs from the FAC in only two respects: (1) it removes the claim that was previously denominated as Count Two, on the ground that the Court's comments during the TRO hearing caused Plaintiffs to "realize[] that their stance [that] the 3-acre RSA is unenforceable and illusory is inconsistent with the First Amended Complaint which alleges a claim for breach of that very agreement"; and (2) it reflects "other changes to the pleading

[that] were necessary to conform to the evidence discovered to date and to reflect Plaintiffs' revised claims against Defendants based on that evidence." (*Id.* at 2.) Plaintiffs contend these changes should be deemed permissible because Rule 15 creates a liberal policy in favor of amendment and because "no trial date has been set, the litigation is in the early stages, and Defendants would not be prejudiced by the proposed amendment." (*Id.*)

In their "preliminary" opposition to the motion to amend, Defendants argue the motion should be denied because it was not accompanied by a separate motion to amend the scheduling order. (Doc. 109 at 2.) Defendants note their intent "to rigorously contest Plaintiffs' attempt to amend the verified [FAC] for a multitude of reasons" but explain that they did "not want to file a lengthy opposition to Plaintiffs' motion if that motion is procedurally improper as Defendants are concerned that they would be participating in motion practice that the [scheduling order] prohibits." (*Id.*)

In their initial reply, Plaintiffs argue that they were not required to file a separate motion to amend the scheduling order and were simply required to establish "good cause" for the amendment request under Rule 16. (Doc. 114 at 1-2.) Plaintiffs argue that good cause exists here because various unanticipated events (including IGD's bankruptcy and the addition of Houchin as a third-party defendant) have arisen since the scheduling order issued and because their amendment request is premised on their discovery of new facts. (*Id.* at 2-4.) Plaintiffs further note that Defendants will not be prejudiced by the amendment because the elimination of Count Two will reduce Defendants' exposure. (*Id.* at 4.) Finally, Plaintiffs accuse Defendants of seeking to apply a "double standard" because Defendants have elsewhere voiced an intention to file a second amended answer and counterclaims. (*Id.* at 4-5.)

In their substantive opposition brief, filed after the Court clarified that Plaintiffs were not required to file a separate motion to amend the scheduling order (Doc. 115), Defendants' primary argument is that Plaintiffs' amendment request is a tactical maneuver intended to eliminate unfavorable evidence:

> Plaintiffs and Defendants both agree that the [FAC] is evidence. But now Plaintiffs want to make certain of the evidence go away because it conflicts

>with Plaintiffs' new legal theory that the April 20 Rev Share was just a gift. The Court should not allow Plaintiffs to alter evidence that Plaintiffs put into the evidentiary record and Plaintiffs should not be allowed to contort sworn allegations into inconsistency in order to pursue a legal theory unsupported by the facts.

(Doc. 123 at 2, citations omitted). Defendants also contend they would be prejudiced by the amendment in light of "Plaintiffs' continuing pattern of denigrating Defendants by using the bankruptcy filing as a shield for Plaintiffs' tactics to delay this litigation." (*Id.* at 4.) In a related vein, Defendants accuse Plaintiffs of various improprieties related to the automatic stay brought about by IGD's bankruptcy. (*Id.* at 4-6.) Next, Defendants argue that the amendment request is being "made in bad faith" because there is "rather voluminous" evidence that the Whole Farm RSA is not, in fact, illusory. (*Id.* at 6-9.) Next, Defendants contend the amendment request is untimely because Plaintiffs could have made it immediately after the July 7, 2022 TRO hearing. (*Id.* at 9-10.) Finally, Defendants contend the amendment request is futile in light of the evidence that the Whole Farm RSA is valid and enforceable. (*Id.* at 10.)

In their reply to Defendants' substantive opposition, Plaintiffs emphasize that they do not agree that the FAC is "evidence," noting that pleadings are generally not evidence and are subject to amendment and further noting that "Defendants denied each one of the paragraphs that Defendants now cite as 'evidence.'" (Doc. 126 at 2-4.) Plaintiffs further argue that there has been no prejudice to Defendants or delay attributable to Plaintiffs and that the amendment is not in bad faith. (*Id.* at 5-9.)

II.     Legal Standard

"[W]hen a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4), which provides that '[a] schedule may be modified only for good cause and with the judge's consent,' rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an

- 5 -

amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* "While a court may take into account any prejudice to the party opposing modification of the scheduling order, the focus of the Rule 16(b) inquiry is upon the moving party's reasons for seeking modification." *Id.* (cleaned up). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the moving party "was not diligent, the inquiry should end." *Id.*

III. <u>Analysis</u>

As a preliminary matter, although the November 7, 2022 order clarified that "Rule 16(b)'s 'good cause' standard replaces Rule 15(a)(1)(2)'s more liberal standard" when, as here, a motion for leave to amend is filed after the amendment deadline in the scheduling order (Doc. 115 at 2), Defendants largely focus on the Rule 15 standard. (Doc. 123 at 3-10.) Plaintiffs interpret this focus as a concession on Defendants' part that the "good cause" standard is met. (Doc. 126 at 4-5.) The Court does not necessarily agree. Although Defendants never explicitly discuss the Rule 16 standard, they do discuss diligence, albeit very briefly (Doc. 123 at 9-10), and their other arguments are not entirely irrelevant to the Rule 16 analysis. *In re W. States Wholesale Nat. Gas*, 715 F.3d at 737 ("[A] court may take into account any prejudice to the party opposing modification.").

Nevertheless, the Court has little trouble concluding that Plaintiffs' amendment request should be granted on the merits. Most important, Plaintiffs exhibited a sufficient degree of diligence. The portion of the amendment request on which the parties focus nearly all of their attention is Plaintiffs' request to eliminate Count Two of the FAC, which is their claim for breach of the Whole Farm RSA. The relevant chronology is that Plaintiffs asserted this claim in the FAC, then realized during the July 2022 hearing that the claim lacked merit, then moved in October 2022 to amend the FAC to remove this claim. Perhaps Plaintiffs could have acted a bit more quickly after the July 2022 hearing to make this amendment request, but in the interim one of the Defendant entities, IGD, filed for

bankruptcy (Doc. 81), it appears that Plaintiffs were briefly confused about whether and to what extent this bankruptcy filing resulted in a stay of these proceedings (Doc. 85), and the bankruptcy court did not grant relief from the automatic stay as to IGD until mid-September 2022 (Doc. 96). Under the circumstances, Plaintiffs acted diligently with respect to their request to eliminate Count Two.

Although the parties' briefs contain relatively little discussion of the other aspects of Plaintiffs' amendment request, the Court is satisfied that Plaintiffs acted diligently with respect to them. As for the request to eliminate Count One of the FAC, which is a claim for a receivership, Plaintiffs explain that "the Receivership requested in [Count One] is no longer necessary" in light of the fact that "IGD is now in bankruptcy," that "the bankruptcy of IGD was not anticipated," and that they "were restricted because of the bankruptcy filing from filing the Motion to Amend until the stay was lifted for a period of approximately three months." (Doc. 114 at 3-4.) Under the circumstances, Plaintiffs acted diligently with respect to their request to eliminate Count One. Finally, as for the other factual changes and redlines in the proposed SAC, the difficulty is that neither side describes those changes with any specificity—Plaintiffs generically characterize them as "changes . . . [that] simply clarify the Complaint" (*id.* at 4) while Defendants do not mention them at all. At any rate, in light of the complications brought about by the automatic stay and the fact that the changes appear to be based on evidentiary developments since the filing of the FAC, the Court is satisfied that Plaintiffs acted diligently with respect to these changes, too.

Defendants' primary objection is that they would suffer prejudice if the amendment request were granted because the amendment would allow Plaintiffs "to alter evidence that Plaintiffs put in the evidentiary record." (Doc. 123 at 2.) This objection lacks merit because the granting of the amendment request would not, in fact, eliminate the evidence on which Defendants hope to rely. Although a superseded complaint is generally "treated . . . as non-existent" and "no longer performs any function" once a new version of the complaint is filed, *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015), Stadtler signed and filed a declaration during the TRO proceeding in which he avowed that

"everything alleged" in the FAC was true. (Doc. 51-1 at 4 ¶ 4.) This declaration will remain part of the evidentiary record after the proposed SAC is filed. Thus, even though the FAC may cease to serve any function *as a pleading* once Plaintiffs' amendment request is granted, Defendants will continue to be able to rely on Stadtler's avowal concerning the accuracy of the facts alleged in the FAC.[2]

Defendants also contend that, to the extent the amendment request seeks to eliminate Count Two, the request is both futile and made in bad faith. These arguments are unavailing.[3] Futility concerns whether a party's attempt to *add* new facts or claims to its pleading should be disallowed because the party would not be entitled to relief even after the addition of those new facts or claims. *Barahona v. Union Pacific Railroad Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) ("[L]eave to amend should be denied as futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (citation and internal quotation marks omitted). *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 15, at 446 (2022) ("Proposed amendments are futile if they either would not fix the defect that led to the initial dismissal or if the new material, though different, would itself fail to state a claim or otherwise be subject to dismissal."). Defendants do not cite any authority suggesting that a plaintiff can be precluded, on futility grounds, from *eliminating* one of its claims and such a rule would make no sense. Indeed, the proper way for a plaintiff to eliminate some (but not all) claims against a defendant is to do exactly what Plaintiffs did here—seek leave to file an amended complaint that eliminates the subset of claims at issue. Gensler, *supra*, Rule 41, at 1266-67 ("[I]f a plaintiff has multiple claims against a defendant and wishes to dismiss one or more—but not all—of those claims, the appropriate procedural mechanism is to file an amended complaint under Rule 15(a)."). For similar

---

[2] The Court expresses no view as to the evidentiary significance, if any, of Stadtler's avowal. The purpose of this analysis is simply to show that Defendants' primary prejudice objection to the amendment request—that it will eliminate certain evidence—is inaccurate.

[3] Defendants do not appear to raise any futility, prejudice, bad faith, or undue delay challenges to the other aspects of the amendment request. Even if Defendants had raised such challenges, the Court would reject them for the same reasons it is rejecting Defendants' challenges to the elimination of Count Two.

- 8 -

reasons, the Court is not persuaded that Plaintiffs' approach constitutes bad faith. Again, Plaintiffs are seeking to eliminate one of their claims because they have now determined that it lacks merit. This seems like a good-faith approach to litigation.[4]

IV. <u>Clarification Regarding The Trust's Capacity To Sue</u>

As a separate matter, in the now-authorized SAC, Plaintiffs must clarify whether and why the Trust is a proper party to this case—that is, whether it is an entity that has the capacity to sue and be sued. Arizona law governs this question. Fed. R. Civ. P. 17(b)(3) (capacity to sue, for parties other than individuals or corporations, is determined by the law of the state where the court is located, with exceptions not relevant here); *Irwin Union Collateral Inc. v. Peters & Burris, LLC*, 2009 WL 5184902, *3 (D. Ariz. 2009) ("[S]ince the trust is neither an individual nor a corporation, the law governing whether the Sass Trust has the capacity to sue or be sued is governed by Arizona law, the state in which this Court sits.").

In general, "it appears that a trust would lack the capacity to sue or be sued under Arizona law." *Irwin Union*, 2009 WL 5184902 at *4; *see also* 76 Am. Jur. 2d Trusts § 601 ("At common law, a trust cannot sue or be sued because it is not a juristic person. In most jurisdictions, a trust is not an entity separate from its trustees, and cannot sue or be sued in its own name, and therefore, the trustee, rather than the trust, is the real party in interest in litigation involving trust property. Because a trust is not a legal entity, and does not have capacity, any suits involving the trust must be brought by or against the trustees."); *Matter of Book*, 2019 WL 2394259, *2 (Ariz. Ct. App. 2019), *review denied* (2019) (unpub.) ("Generally, a common-law trust is not considered a legal entity capable of suing or being sued; therefore, any suit involving the trust must be brought by or against its trustee.").

However, "[t]he power of a trust to sue or be sued depends on the nature of the trust." *McLeod v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 2189498, *3 (Ariz. Ct. App.

---

[4] By making this observation, the Court expresses no prejudgment as to Defendants' pending motion for Rule 11 sanctions. (Doc. 118.) That motion challenges Plaintiffs' prior conduct related to Count Two, not the current act of amending the FAC to eliminate Count Two.

- 9 -

2017) (unpub.). "Traditionally, a trust was not considered a distinct legal entity, but a 'fiduciary relationship' between multiple people. Such a relationship was not a thing that could be haled into court . . . . Many States, however, have applied the 'trust' label to a variety of unincorporated entities that have little in common with this traditional template . . . [and sometimes] can sue or be sued." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (citations omitted).

The Court currently lacks the information necessary to determine whether the Trust is a traditional trust (in which case it must be dropped as a party and its trustee added) or an unincorporated entity that can sue and be sued (in which case the SAC must list the name and citizenship of each of its members). *Id.* ("So long as such an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members.").

Accordingly,

**IT IS ORDERED** that:

1. Plaintiffs' motion to amend (Doc. 103) is **granted**.

2. Plaintiffs must, within 10 days of the issuance of this order, file a Second Amended Complaint ("SAC"). The SAC should mirror the proposed SAC (Doc. 104) previously filed by Plaintiffs, except that it must also include the changes, discussed above, addressing the Trust's status as a proper party.

Dated this 29th day of November, 2022.

Dominic W. Lanza
United States District Judge